**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLORADO**

Civil Action No. 16-cv-02300

NOOSA YOGHURT, LLC,

      Plaintiff,

v.

SCHREIBER FOODS, INC.

      Defendant.

---

**COMPLAINT FOR TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION**

---

      Plaintiff Noosa Yoghurt, LLC ("Noosa") alleges as follows against Defendant, Schreiber Foods, Inc. ("Schreiber").

**NATURE OF ACTION**

      1.     This is a civil action for federal trade dress infringement under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1125(a)(1)(A), federal unfair competition under 15 U.S.C. § 1125(a)(1)(A), common law trade dress infringement and unfair competition under Colorado law, and deceptive business practices under COLO. REV. STAT. § 6-1-105.

**PARTIES**

      2.     Noosa is a company organized and existing under the laws of the State of Colorado, with its principal place of business in Bellvue, Colorado.

      3.     Noosa produces a whole-milk, fruit-on-the-bottom yogurt under the brand name "Noosa" ("Noosa yogurt"). Its products are sold nationwide.

4.     Upon information and belief, Schreiber is a company organized and existing under the laws of the State of Wisconsin, with its principal place of business in Green Bay, Wisconsin.

5.     Schreiber, upon and information belief, is a supplier and packager of dairy products, doing business in North America, Brazil, India, and Europe, which has produced, packaged, distributed, and sold and/or currently produces, packages, distributes, and sells various product lines of whole-milk, fruit-on-the-bottom yogurt, including "DunDee" ("DunDee yogurt"), "Friendly Farms" ("Friendly Farms yogurt"), and "Private Selection Aussie Style Yogurt" ("Private Selection yogurt").

## JURISDICTION AND VENUE

6.     The first count arises under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1125(a) and 28 U.S.C. § 1338(a) and (b).  This Court has jurisdiction over this claim for Relief under 15 U.S.C. §§ 1116-1118.

7.     The second through fourth counts arise under Colorado statutory and common law. This Court has jurisdiction over the fourth count under 28 U.S.C. § 1338(b) in that these claims are joined with substantial and related claims brought under the laws (15 U.S.C. § 1117, § 1125 *et seq.*) of the United States and because diversity jurisdiction exists between the parties (28 U.S.C. § 1332(a)(1)) and the sum in controversy exceeds the minimum value set forth in 28 U.S.C. § 1332(a). This Court also has jurisdiction over the second through fourth counts under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

8.      Noosa's corporate headquarters is located in the State of Colorado and the majority of its operations, including manufacturing, finance, marketing, and production, are based in Colorado.

9.      Noosa also markets and sells Noosa yogurt in and from the State of Colorado.

10.     Upon information and belief, Schreiber distributes, offers for sale, and sells its products, including the Private Selection yogurt, in the State of Colorado.

11.     Consequently, the Court has personal jurisdiction over Schreiber due to the fact that the claims pleaded below arise from, and/or are related to, Schreiber's contacts with Colorado.

12.     Venue for these claims is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District and pursuant to §1391(c) because Schreiber is subject to personal jurisdiction in this District.

## BACKGROUND

13.     Noosa's rapid success as a yogurt phenomenon is an example of the American dream in action.

14.      Noosa was founded in 2009 in Boulder, Colorado, by a young Australian expatriate named Koel Thomae.

15.     On a trip home to Australia in 2005, Koel discovered a rich, creamy, fruit-on-the-bottom, whole-milk yogurt at a corner store.

16.     It was the best yogurt Koel had ever tasted, and after researching the yogurt industry, she was determined to bring such a product to the United States.  She teamed up with the makers of that Australian yogurt and Noosa yogurt was born.

17.     In order to manufacture and produce Noosa yogurt in Colorado, Koel also teamed up with a fourth-generation local dairy farmer who was looking for a means of expanding his own product lines.

18.     The venture started out small and inglorious in a one-room shop on a dairy farm, making five-pound batches of yogurt by hand and storing the product in buckets.

19.     However, as Noosa yogurt sales increased, Koel began searching for the perfect packaging to highlight and communicate the freshness and unique taste of Noosa yogurt.

20.     Seeking to differentiate Noosa yogurt from traditional yogurt packaging shapes, Koel gravitated toward a squatter, flatter container for Noosa's eight-ounce, single-serve yogurt package.

21.     Koel ultimately decided on a package design that had never before been used for yogurt, namely a minimalist transparent tub, wider than it was tall, with a dramatic and eye-catching black lid with a brightly colored label, deeply contrasted with the contents of the tub, and playful black lettering as a nod to the product's Australian heritage.

22.     The resulting elements of Noosa's trade dress can be seen in Figure 1 and include: the unusual dimensions of the container (with the tub wider than it is tall), the transparent container which shows the product inside, the playful black lettering (using letters of different sizes appearing in an up and down, wave-like pattern) that creates a stark contrast with the transparent tub, the black rim around the lid, the inlaid vivid solid-colored label with an eggshell sheen finish that contrasts with the black lettering, and the black fruit silhouette portrayed thereon (the "Noosa Trade Dress").   The Noosa Trade Dress, comprised of this unique combination of elements, is inherently distinctive and/or has acquired distinctiveness.

**Figure 1**



23.     Koel designed, and Noosa significantly invested in, a trade dress that had never been seen before on yogurt shelves, knowing that this unique and distinctive trade dress would immediately catch the eye of consumers and serve as a source-identifier for an equally unique and distinctive yogurt.

24.     As it turned out, Koel's and Noosa's investment was a success, due in large part to the unique and distinctive trade dress.

25.     In the mere seven years since Noosa began selling its Noosa yogurt, Noosa has gone from a one-room shop on a dairy farm to an enterprise with nearly 150 employees, over $100 million in sales in 2015, and distribution in approximately 25,000 retail outlets nationwide.

26.     In Noosa's home state of Colorado, it is ranked the number-two yogurt at King Soopers, the leading grocery chain in Colorado.

27.     Indeed, Noosa is currently in the process of a multimillion-dollar expansion project to upgrade its existing equipment in order to meet increasing demand.

28.     Noosa has also expanded its yogurt flavors from plain yogurt to 23 different flavors, including blueberry, strawberry rhubarb, raspberry, lemon, pumpkin, mango, honey, vanilla, tart cherry, pineapple, coconut, peach, cranberry apple, blackberry serrano, salted caramel, blood orange, key lime, passion fruit, Mexican chocolate, Bhakti Chai, mango sweet chili, raspberry habanero, and pineapple jalapeno.

29.     Today, Noosa's distributors include such well-known retailers as Kroger, Target, Whole Foods, Safeway, Alberton's, Harris Teeter, Wegmans, Giant, Publix, and Walmart.

30.     Noosa's explosive entrance into the yogurt market, including its use of the unique and distinctive Noosa Trade Dress, has been well-documented in the media, including television, radio, newspapers, magazines and the Internet.

31.     Noosa has also received numerous accolades, including in Forbes 2015 CircleUp 25, where it was selected as one of the 25 Innovative Consumer and Retail Brands for 2015, The Gourmet Retailer, where it was recognized as one of the most delicious and decadent specialty food items, and the Progressive Grocer's Editor's Picks, where pumpkin Noosa yogurt was a top pick.  Noosa's pumpkin yogurt was also featured in Cooking Light's 2015 Taste Test Awards for

the 24 Best 200-Calorie Prepackaged Snacks, People Magazine's Comprehensive Guide to Pumpkin Spice Flavored Foods, and the Food Network's 12 New Pumpkin-Flavored Foods You Gotta Try. Noosa's new blackberry serrano flavor was also highlighted by the Food Network in February 2016.  In February 2016, Koel also appeared on the Today Show to talk about the dramatic success of Noosa yogurt.

32.     Noosa has also been the recipient of several awards for its yogurt products, including Finalist for the Best Ingredient/Flavoring at the International Dairy Show 2015 for cranberry-apple Noosa yogurt and World Dairy Innovation Award Finalist for "best yogurt" and "best dairy dessert" in 2016. It is also currently ranked the number-one yogurt in Colorado by sales.

33.     To achieve this meteoric rise, Noosa not only created a unique and distinctive niche product, but also spent millions of dollars over the past nearly seven years on advertising, marketing and promotional activities.

34.     For instance, Noosa has hosted extensive promotional activities such as free giveaways and product samplings across the nation in cities such as Chicago, Denver, Los Angeles, San Francisco, and Washington, D.C.

35.     Noosa also has a strong social media presence through which it regularly interacts with its customers.  Central to this social media identity is the unique and distinctive packaging of Noosa yogurt.  For example, it has an active Facebook page with over a 145,000 likes and Instagram and Twitter feeds with thousands of followers.

36.     Noosa also maintains a website located at http://www.noosayoghurt.com, where it displays and promotes Noosa yogurt and the Noosa Trade Dress.

37.     Apparently seeking to capitalize on Noosa's incredible success, beginning on or around July of 2015, Schreiber launched one or more product lines of fruit-on-the-bottom, whole-milk yogurt in eight-ounce containers, marketed as "Aussie-Style" yogurts, and sold to retailers and others for resale, sometimes as "house" or "private" brands, under the names "DunDee," "Friendly Farms," and "Private Selection."

38.     An example of the packaging of the DunDee whole-milk yogurt product can be seen in Figure 2, and includes the unusual dimensions of an eight-ounce container (with the tub wider than it is tall and virtually identical in shape to the container for the Noosa yogurt), the transparent container that shows the product inside, the playful black lettering (using letters of different sizes) that creates a stark contrast with the transparent tub, the black rim around the lid, and the inlaid, vivid, solid-colored label with an eggshell-sheen finish which contrasts with black lettering (the "DunDee Trade Dress").

39.     Noosa previously filed a lawsuit against the reseller of the DunDee product, Hain Celestial, which has been settled. Hain has represented that the DunDee product is no longer being sold by Hain.

**Figure 2**



40.     An example of the packaging of the Friendly Farms whole-milk yogurt product can be seen in Figure 3 and includes the unusual dimensions of an eight-ounce container (with the tub wider than it is tall and virtually identical in shape to the container for the Noosa yogurt), the transparent container that shows the product inside, the playful lettering (using letters of different sizes appearing in an up and down pattern) that creates a stark contrast with the transparent tub, as well as the black rim around the lid with an inlaid, vivid, solid-colored label thereon (the "Friendly Farms Trade Dress"). The Friendly Farms yogurt product bearing the Friendly Farms Trade Dress has been sold in Aldi stores.

41.     Through counsel, Noosa complained in writing to Aldi Inc. concerning the Friendly Farms Trade Dress. The Senior Vice President and General Counsel of Schreiber

responded on behalf of Aldi Inc. and represented that Friendly Farms yogurt is no longer being sold by Aldi Inc.

**Figure 3**





42. An example of the packaging of the Private Selection whole-milk yogurt product can be seen in Figure 4, and includes the unusual dimensions of an eight-ounce container (with the tub wider than it is tall and virtually identical in shape to the container for the Noosa yogurt), the transparent container that shows the product inside, as well as the black rim around the lid and the inlaid, vivid, solid-colored label with an eggshell-sheen finish (the "Private Selection Trade Dress").

**Figure 4**





43.     Schreiber, upon information and belief, currently distributes and sells its Private Selection yogurt product to a nationwide grocery store chain and the product has been sold in this state.

44.     Through counsel, Noosa complained in writing to Schreiber regarding Schreiber's production, packaging, distribution and sale of yogurt products that infringe the Noosa Trade Dress, including the Private Selection yogurt. Although Schreiber confirmed that Aldi Inc. is no longer selling Friendly Farms yogurt, it did not otherwise respond or cease its production, packaging, distribution and sale of the Private Selection yogurt.

45.     Upon information and belief, prior to the appearance of the DunDee, Friendly Farms, and Private Selection yogurts on the market, Noosa yogurt was the only yogurt featuring a trade dress that combined the unique and distinctive elements of the Noosa Trade Dress.

46.     Not surprisingly, given the strikingly similar appearance of the product packaging, the Private Selection Trade Dress has already caused consumer confusion with the Noosa Trade Dress.

47.     In the short time that the Private Selection yogurt has been on the market, consumers have contacted Noosa as a result of actual confusion in the marketplace.  Such communications include inquiries about Noosa's relationship with Private Selection, comments on the similarity of the Private Selection product packaging to Noosa's product packaging, and complaints from customers who have purchased Private Selection yogurt thinking that they had purchased the Noosa yogurt.

48.     Upon information and belief, Schreiber deliberately chose to copy the Noosa Trade Dress in an effort to trade on the goodwill, reputation, and success of Noosa's yogurt.

49.     Upon information and belief, Schreiber's decision to offer the DunDee, Friendly Farms, and Private Selection yogurts in packaging strikingly similar to the Noosa Trade Dress is unrelated to any potentially alleged functional aspect of the trade dress.  This is demonstrated by the fact that, prior to the entry of Schreiber's DunDee, Friendly Farms, and Private Selection yogurt products into the market, there was no other yogurt product packaging on the market that even came close to resembling the Noosa Trade Dress.

50.     Schreiber has no authority from Noosa, directly or indirectly, to utilize the Noosa Trade Dress or to license others to do so.

51.     For the reasons set forth above, Schreiber's activities, *inter alia*, infringe the Noosa Trade Dress, which results in irreparable harm to Noosa.

52.     Noosa therefore files this action to protect its rights to its unique and distinctive Noosa Trade Dress, to avoid further consumer confusion, and to prevent irreparable harm to its brand and its business.

## COUNT ONE
### *Federal Trade Dress Infringement & Unfair Competition*
### 15 U.S.C. § 1125(a)(1)(A)

53.     Noosa incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     Noosa has common law rights to the Noosa Trade Dress, which is uniquely associated with Noosa as a source of the yogurt products offered in connection with such trade dress.

55.     The Noosa Trade Dress is not functional and was chosen to serve as an easy source-identifier and to differentiate the Noosa yogurt from other yogurt products on the market.

56.     The Noosa Trade Dress is inherently distinctive, because its unique features naturally serve to identify Noosa as the source of the product to consumers.

57.     Through its extensive promotional, advertising, marketing (including through social media), sales, and exclusive use of the trade dress, the Noosa Trade Dress has also acquired distinctiveness in the market.

58.     Schreiber has used in commerce the DunDee, Friendly Farms, and Private Selection Trade Dresses in connection with the production, packaging, sale, offering for sale, or distribution of its yogurt products.

59.     As described above, each of the DunDee, Friendly Farms, and Private Selection Trade Dresses shares numerous virtually identical elements of the Noosa Trade Dress.

60.     Schreiber has used in commerce trade dresses which are nearly identical or confusingly similar to the Noosa Trade Dress in connection with the DunDee and Friendly Farms yogurts, which were likely to cause confusion or mistake, or which were likely to deceive, as to the affiliation, connection, or association of these product lines with Noosa or as to the origin, sponsorship or approval of the DunDee and Friendly Farms yogurts or Schreiber's commercial activities by Noosa, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

61.     Schreiber's use of the Private Selection Trade Dress is likely to cause confusion or mistake, and is likely to deceive, as to the affiliation, connection, or association of this product line with Noosa or as to the origin, sponsorship or approval of the Private Selection yogurt or Schreiber's commercial activities by Noosa, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

62.     Noosa has been, and will continue to be, damaged by Schreiber's acts of federal trade dress infringement and unfair competition in an amount to be determined at trial.

63.     Upon information and belief, Schreiber's conduct is willful, deliberate, intentional, and in bad faith.

64.     As a result of Schreiber's acts, Schreiber has caused, and will continue to cause, irreparable harm to Noosa and to the goodwill associated with the Noosa Trade Dress, for which Noosa has no adequate remedy at law. Thus, Noosa is entitled to injunctive and other relief.

## COUNT TWO
### *Common Law Trade Dress Infringement Under Colorado Law*

65.     Noosa incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     Noosa is the owner of common law rights in and to the Noosa Trade Dress, which is uniquely associated with Noosa as a source of Noosa yogurt offered in connection with the Noosa Trade Dress.

67.     The Noosa Trade Dress is not functional and is inherently distinctive and/or has acquired distinctiveness.

68.     Noosa has established goodwill associated with the Noosa Trade Dress and Schreiber is trading upon Noosa's goodwill through unauthorized and unlicensed use of Noosa's common law trade dress rights in the Noosa Trade Dress.

69.     Schreiber's intentional, unauthorized use of trade dresses, which are nearly identical or confusingly similar to the Noosa Trade Dress, in connection with the production, packaging, sale, offering for sale, or distribution of the DunDee and Friendly Farms yogurts has

caused or was likely to cause confusion or mistake, or has deceived or was likely to deceive, in violation of Colorado common law.

70.     Schreiber's intentional, unauthorized use of the Private Selection Trade Dress, which is nearly identical or confusingly similar to the Noosa Trade Dress, in connection with the production, packaging, sale, offering for sale, or distribution of the Private Selection yogurt has caused or is likely to cause confusion or mistake, or has deceived or is likely to deceive, in violation of Colorado common law.

71.     Schreiber's intentional, unauthorized use of trade dresses, which are nearly identical or confusingly similar in appearance to the Noosa Trade Dress, in connection with the sale of DunDee and Friendly Farms yogurts constituted infringement of Noosa's preexisting common law rights in the Noosa Trade Dress, which Noosa acquired in good faith.

72.     Schreiber's intentional, unauthorized use of the Private Selection Trade Dress, which is nearly identical or confusingly similar to the Noosa Trade Dress, in connection with the Private Selection yogurt, constituted and continues to constitute infringement of Noosa's preexisting common law rights in the Noosa Trade Dress, which Noosa acquired in good faith.

73.     Upon information and belief, by deliberately copying the Noosa Trade Dress, Schreiber has willfully, deliberately, maliciously, intentionally, knowingly, and in bad faith violated—and continues to violate—Noosa's common law trade dress rights.

74.     As a result of Schreiber's acts, Schreiber has caused, and will continue to cause, irreparable harm to Noosa and to the goodwill associated with the Noosa Trade Dress, for which Noosa has no adequate remedy at law. Thus, Noosa is entitled to injunctive and other relief.

**COUNT THREE**
***Common Law Unfair Competition Under Colorado Law***

75.     Noosa incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76.     Noosa is the owner of common law rights in and to the Noosa Trade Dress, which is uniquely associated with Noosa as a source of the goods offered in connection with such trade dress.

77.     The Noosa Trade Dress is not functional and is inherently distinctive and/or has acquired distinctiveness.

78.     Noosa has established goodwill associated with the Noosa Trade Dress and Schreiber is trading upon Noosa's goodwill through unauthorized and unlicensed use of Noosa's common law trade dress rights in the Noosa Trade Dress.

79.     Upon information and belief, Schreiber has misappropriated the Noosa Trade Dress in order to exploit and trade off Noosa's goodwill and reputation in the market.

80.     Schreiber's conduct, including as described above, has caused or is likely to cause confusion or mistake, or has deceived or is likely to deceive, as to the affiliation, connection, and/or association of Schreiber with Noosa as to the origin, sponsorship, or approval of the Private Selection yogurt or Schreiber's commercial activities by Noosa, and/or as to the nature and quality of Schreiber's infringing products, in violation of Colorado common law.

81.     Schreiber's conduct, including as described above, has caused confusion or mistake, or has deceived, as to the affiliation, connection, and/or association of Schreiber with Noosa as to the origin, sponsorship, or approval of the DunDee and Friendly Farms yogurts or

Schreiber's commercial activities by Noosa, and/or as to the nature and quality of Schreiber's infringing products, in violation of Colorado common law.

82.     Upon information and belief, Schreiber's unfair and unlawful conduct, including as described above, was and continues to be deliberate, knowing, and in willful disregard of Noosa's intellectual property rights.

83.     Upon information and belief, Schreiber's intentional and willful actions set forth above constitute unlawful "passing off" under Colorado unfair competition common law.

84.     Schreiber's actions have caused and will continue to cause irreparable injury to Noosa and have resulted and will continue to result in unjust enrichment to Schreiber unless Schreiber is restrained and/or enjoined by this Court from further violations of Noosa's trade dress rights.

85.     As a result of Schreiber's acts, Schreiber has caused, and will continue to cause, irreparable harm to Noosa and to the goodwill associated with the Noosa Trade Dress, for which Noosa has no adequate remedy at law. Thus, Noosa is entitled to injunctive and other relief.

## COUNT FOUR
### *Deceptive Business Practices Under Colorado Law*
### COLO. REV. STAT. § 6-1-105

86.     Noosa incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.     Noosa is the owner of common law rights in and to the Noosa Trade Dress, which is uniquely associated with Noosa as a source of the goods offered in connection with such trade dress.

88. The Noosa Trade Dress is not functional and is inherently distinctive and/or has acquired distinctiveness.

89. Noosa has established goodwill associated with its trade dress and Schreiber is trading upon Noosa's goodwill through unauthorized and unlicensed use of Noosa's common law trade dress rights.

90. In the course of Schreiber's business, Schreiber has used deceptive representations in connection with its goods by using the DunDee, Friendly Farms, and Private Selection Trade Dresses, which are identical or confusingly similar to the Noosa Trade Dress, in connection with the DunDee, Friendly Farms, and Private Selection yogurts.

91. Schreiber has knowingly made false representations as to the source, sponsorship, approval or certification of goods through its unauthorized use of trade dresses in connection with DunDee, Friendly Farms, and Private Selection yogurts, which are identical or confusingly similar to the Noosa Trade Dress. Further, Schreiber has knowingly made false representations as to affiliation, connection, or association with or certification by Noosa through its unauthorized use of trade dresses in connection with the DunDee, Friendly Farms, and Private Selection yogurts, which are identical or confusingly similar to the Noosa Trade Dress. With respect to the Private Selection Trade yogurt, these false representations are ongoing.

92. In the course of its business, Schreiber is using trade dresses which are identical or confusingly similar to the Noosa Trade Dress in connection with, *inter alia*, the sale and distribution of its products without authorization from Noosa.

93. The public and relevant consumers associate the Noosa Trade Dress with Noosa and its goods, namely yogurt, and Schreiber's use of the DunDee, Friendly Farms, and Private

Selection Trade Dresses has given rise to actual consumer confusion and, with respect to the Private Selection Trade Dress, will continue to cause consumer confusion in the future.

94.     Noosa has expended significant resources in the development, promotion, and protection of its Trade Dress.

95.     Schreiber's unauthorized use of the trade dresses, which are identical or confusingly similar to the Noosa Trade Dress, falsely signaled to the general public that Noosa has approved the goods offered by Schreiber in connection with the DunDee, Friendly Farms, and Private Selection Trade Dresses, which it has not.

96.     Upon information and belief, Schreiber's intentional and willful actions set forth above constitute unlawful and deceptive business practices under COLO. REV. STAT. § 6-1-105.

97.     Schreiber's actions have caused and will continue to cause irreparable injury to Noosa and have resulted and will continue to result in unjust enrichment to Schreiber unless Schreiber is restrained and/or enjoined by this Court from further violations of Noosa's rights.

98.     As a result of Schreiber's acts, Schreiber has caused, and will continue to cause, irreparable harm to Noosa and to the goodwill associated with the Noosa Trade Dress, for which Noosa has no adequate remedy at law. Thus, Noosa is entitled to injunctive and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Noosa prays for the following relief from this Court:

A.      Enter judgment in favor of Noosa, and against Schreiber, on all counts.

B.      Preliminarily and permanently enjoin Schreiber from directly or indirectly engaging in any further trade dress infringement, unfair competition, or deceptive trade practices against Noosa, and from aiding, abetting, encouraging, or inducing another to do so.

C.      Order an accounting and order Schreiber to pay over to Noosa:

i.      All monetary gains, profits, and advantages derived by Schreiber from the acts complained of herein;

ii.      Damages incurred by Noosa, including enhanced damages (up to treble damages) as authorized by 15 U.S.C. § 1117;

iii.      Punitive and exemplary damages to be determined by the Court after a full hearing on the merits; and

iv.      Noosa's costs and disbursements in this action, including reasonable attorneys' fees and prejudgment and post-judgment interest.

D.      Require Schreiber to deliver to Noosa any and all product packaging, advertising, signage, promotional material, and any other materials bearing infringing or deceptively similar trade dress in Schreiber's possession or under its control that are subject to the injunctive order of this Court.

E.      Award Noosa any other or further relief that the Court deems just or appropriate.

Respectfully submitted this 12th day of September, 2016.

HOGAN LOVELLS US, L.L.P.

*/s/ Clayton C. James*
Clayton C. James
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
Tel.: (303) 899-7300
Fax: (303) 899-7333
E-mail: clay.james@hoganlovells.com

Raymond A. Kurz
Anna Kurian Shaw
Katherine Bastian
Hogan Lovells US LLP
555 13th Street, NW
Washington, DC 20004
Tel.: (202) 637- 5600
Fax: (202) 637- 5910
E-mail: raymond.kurz@hoganlovells.com
        anna.shaw@hoganlovells.com
        katherine.bastian@hoganlovells.com

*Attorneys for Plaintiff Noosa Yoghurt, LLC*